# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| VNUE, Inc., | |
| Plaintiff, | |
| v. | Case No.: 1:24-cv-2884 |
| B F Borgers CPA PC and Benjamin F. Borgers , | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff VNUE, Inc. ("VNUE"), by and through its attorneys Bochner PLLC, bring this action against Defendants B F Borgers CPA PC ("BF") and Benjamin F. Borgers ("Borgers") (collectively "Defendants") on personal knowledge as to their own activities and on information and belief as to all other matters, and allege as follows:

## PARTIES

1.      Plaintiff VNUE is a Nevada corporation with a principal place of business located at 104 W. 28th Street, 11th Floor, New York NY 10001.

2.      Defendant BF is a Colorado limited liability company with its principal place of business located in the State of Colorado

3.      Defendant Borgers is a natural person and citizen of the State of Colorado.

## JURISDICTION AND VENUE

4.      Subject matter jurisdiction over the claims in this action is conferred upon this Court by 28 U.S.C. § 1332 (diversity jurisdiction).

5.      Plaintiff is a citizen of the State of Nevada. Upon information and belief, Defendants are both citizens of the State of Colorado. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400(b) at least because Defendants reside within this District, and both Plaintiff and Defendants transact business within this District.

## FACTUAL ALLEGATIONS

7.      BF is a public accounting firm that provides auditing and consulting services to public and private companies, including Plaintiff.

8.      BF is responsible for conducting audits and issuing audit reports in accordance with Public Company Accounting Oversight Board ("PCAOB") standards.

9.      From January 2021 to June 2023, the BF had approximately 350 clients, including Plaintiff, who were required under SEC rules and regulations to have their financial statements audited and/or reviewed by a PCAOB-registered accounting firm in accordance with PCAOB standards and to incorporate those financial statements into filings made with the SEC.

10.     BF represented in engagement letters to these clients, including Plaintiff, that the audits and quarterly reviews of their financial statements would be conducted in accordance with PCAOB standards.

11.     Since June 2020, Plaintiff had engaged Defendants to conduct audits of its financial statements in accordance with PCAOB standards, as reflected in a letter agreement (the "Contract") attached hereto as **Exhibit 1**.

3

12.    After entering into the Contract, Plaintiff continued to use the auditing services of Defendants under the terms of the Contract until Defendants' fraudulent activities, as discussed further herein, were brought to light in May 2024.

13.    The Contract states that auditing services will be conducted in accordance with the standards established by the Public Company Accountancy Oversight Board and generally accepted auditing standards.

14.    Contrary to these representations, BF failed to conduct audits and/or quarterly reviews for Plaintiff in accordance with PCAOB standards, and, with respect to the audits, issued reports falsely certifying that the audits were completed in accordance with those standards.

15.    In addition, with respect to Plaintiff, BF failed to (1) properly prepare and retain audit documentation and (2) failed to obtain engagement quality reviews.

16.    On May 3, 2024, in response to BF's misconduct, the SEC issued an Order Instituting Public Administrative and Cease-and-Desist Proceedings pursuant to federal law (attached hereto as **Exhibit 2**).

17.    Borgers is the sole owner and managing partner of the Firm.

18.    At all relevant times, Borgers was a Certified Public Accountant.

19.    Borgers directed the fraudulent activities of BF with respect to Plaintiff.

20.    Borgers was responsible for supervising and reviewing the work of the audit engagement teams.

21.    Borgers instructed his staff to create false audit documentation.

22.    Borgers failed to ensure that engagement quality reviews were performed.

23.    Borgers allowed unqualified staff to perform key audit tasks.

24.    Borgers did not adequately supervise or review the work of the audit teams, leading to incomplete and inaccurate audits.

25.    Borgers falsely represented to Plaintiff that financial audits performed under the Contract complied with PCAOB standards.

26.    Borgers permitted the inclusion of non-compliant audit reports in public filings with the SEC and failed to implement adequate internal controls to ensure the quality of audits conducted by BF.

27.    As a result, non-compliant audit reports for Plaintiff were included in public filings with the SEC.

28.    Furthermore, as a direct result of Defendants' actions as alleged herein, Plaintiff has been prevented from drawing funds from its equity line of credit in the amount of $1,487,637 (the "ELOC"), as financial audit records that comply with PCAOB standards are a prerequisite for drawing funds from the ELOC.

29.    Plaintiff's inability to draw from the ELOC – caused directly and exclusively by Defendants – has created a materially negative impact on Plaintiff's ability to continue operating for the foreseeable future, as it no longer maintains its primary, readily available source of capital funding.

30.    Plaintiff, as well as its investors, employees and the public were misled about Plaintiff's financial conditions.

31.    Plaintiff was charged by BF and paid BF for audits that did not meet the professional standards expected of a CPA whatsoever.

32.    Plaintiff must now engage new, credible accountants and pay for newly audited financials to revise and replace the non-compliant financial audit reports created by BF, at the direction of Borgers, at an estimated cost of no less than $150,000.00.

33.    From 2020 through 2024, Plaintiff paid approximately $277,000 to BF for its services.

34.    Plaintiff has received a proposal from a different accounting firm to redo the BF's non-compliant financials for $150,000 and is paying for these services.

## COUNT I: NEGLIGENT MISREPRESENTATION UNDER COLORADO LAW
### (Plaintiff v. All Defendants)

35.    Defendants provided false information to Plaintiff including certifications that audited financials complied with PCAOB standards.

36.    Defendants provided information to Plaintiff in the course of Defendants' business dealings as CPAs.

37.    Defendants provided the information to Plaintiff for use in required SEC filings.

38.    Defendants were negligent in promising to provide financials consistent with PCAOB standards and in certifying that financials complied with PCAOB standards.

39.    Defendants provided the information with the intent that Plaintiff would use the financials in required SEC filings.

40.    Plaintiff did in fact rely on the information by using the financials in required SEC filings.

41.    This reliance on the information supplied by Defendants caused damage to Plaintiff, including but not limited to fees paid to BF for the inadequate financials, costs necessary to correct the inadequate financials by engaging a different, trustworthy accounting firm, the forfeiture of the ELOC, and an estimated $3,000,000.00 in lost revenue.

## COUNT II: PROFESSIONAL NEGLIGENCE UNDER COLORADO LAW
### (Plaintiff v. All Defendants)

42.     Defendants, who Plaintiff engaged as CPAs for financial auditing services, owed Plaintiff a legal duty to perform these services in accordance with professional standards for CPAs.

43.     Defendants, who were engaged in their capacity as CPAs by Plaintiff, had a duty to provide adequate, and factually reliable audited financials, including by complying with PCAOB standards.

44.     Defendants breached their duty of care to Plaintiff by knowingly and willingly preparing inadequate financial reports, which did not comply with PCAOB standards

45.     Plaintiff suffered damages, including but not limited to fees paid to BF for the inadequate financials, costs necessary to correct the inadequate financials with a different, trustworthy accounting firm, the forfeiture of the ELOC, and an estimated $3,000,000.00 in lost profits.

46.     Absent Defendants' breach of the legal duty they owed to Plaintiff, Plaintiff would not have suffered the damages alleged herein.

## COUNT III: DECEPTIVE TRADE PRACTICES UNDER COLORADO LAW
### (Plaintiff v. All Defendants)

47.     The Colorado Consumer Protection Act under CRSA § 6-1-105 provides in relevant part that "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: (g) [r]epresents that goods, food, **services, or property are of a particular standard**, quality, or grade, or that goods are of a particular style or model, **if he knows or should know that they are of another**[.]"

7

48.     CRSA § 6-1-113 provides that:

any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article 1 is liable in an amount equal to the sum of: (a) The greater of: (I) The amount of actual damages sustained, including prejudgment interest of either eight percent per year or at the rate provided in section 13-21-101, whichever is greater, from the date the claim under this article 1 accrued; or (II) Five hundred dollars; or (III) Three times the amount of actual damages sustained, if it is established by clear and convincing evidence that such person engaged in bad faith conduct; plus (b) In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court.

49.     CRSA § 6-1-113 further provides that "'bad faith conduct' means fraudulent, willful, knowing, or intentional conduct that causes injury."

50.     At all relevant times, Defendants were aware that they promised Plaintiff that they would provide audited financials consistent with PCAOB standards as set forth in the Contract. Defendants certified that they did so, while maintaining knowledge that they in fact, did not uphold this promise.

51.     This deception occurred in the course of Defendants engaging in their business of providing financial auditing services as CPAs.

52.     This deceptive practice in the course of Defendants' business dealings significantly impacted the public because (1) Defendants held themselves out to provide audited financials consistent with PCAOB standards, despite not doing so, thereby affecting every BF client, including Plaintiff, and potential client required to comply with PCAOB standards in filings with the SEC; and (2) the inadequate, non-compliant financials were filed with the SEC, thus deceiving Plaintiff, its investors, its employees, and the public at large as potential investors or customers.

53.     Plaintiff was an actual consumer of Defendants' accounting services and was injured in the course of their business as a direct result of Defendants' deceptive trade practice.

54.     At all relevant times, Defendants' fraudulent conduct was willful, knowing and intentional.

55.     The deceptive trade practices described herein caused actual damages to Plaintiff, including but not limited to fees paid to BF for the inadequate, fraudulently prepared financials, and costs necessary to correct the inadequate financials with a different, trustworthy accounting firm.

## COUNT IV: BREACH OF FIDUCIARY DUTY
## UNDER COLORADO LAW
### (Plaintiff v. All Defendants)

56.     As the professional accountant engaged by Plaintiff, Defendants owed Plaintiff a fiduciary duty to prepare audited financials consistent with PCAOB standards.

57.     By failing to provide audited financials consistent with PCAOB standards, while falsely certifying that they did, Defendants breached their fiduciary duty to Plaintiff.

58.     Plaintiff was harmed as a direct result of Defendants' breach, and is entitled to damages, including but not limited to, attorney's fees.

## COUNT V: BREACH OF CONTRACT UNDER
## COLORADO LAW
### (Plaintiff v. BF)

59.     Defendant BF offered to provide audited financials consistent with PCAOB standards to Plaintiff.

60.     Plaintiff accepted BF's offer and paid valuable consideration to BF in exchange for BF to provide the promised financials.

61.     BF breached the Contract with Plaintiff by failing to provide financials that complied with PCAOB standards.

62.     Plaintiff incurred damages as a result, including but not limited to fees paid to Defendant for the inadequate, fraudulent financials and costs necessary to correct the inadequate financials with another, trustworthy accounting firm, the forfeiture of the ELOC, and an estimated $3,000,000.00 in lost profits.

## COUNT VI: UNJUST ENRICHMENT UNDER COLORADO LAW
**(Plaintiff v. BF)**

63.     Plaintiff conveyed a benefit on BF in the form of fees paid to BF for financials that complied with PCAOB standards.

64.     BF knowingly provided financials to Plaintiff did not comply with PCAOB standards.

65.     Despite this, BF has retained its fees.

66.     Plaintiff is entitled to damages, including but not limited to disgorgement of the fees it paid for the inadequate, fraudulently prepared financials.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

A. On Counts I-VI, awarding Plaintiff actual and compensatory damages in an amount no less than $4,914,637.00;

B. On Counts III and IV, awarding Plaintiff attorney's fees and litigation expenses associated with this action;

C. On Count III, awarding Plaintiff pre-judgment, post-judgment interest on the foregoing sums;

D. Awarding Plaintiff such other statutory penalties as provided by law and;

E.  Awarding Plaintiff such other and further relief as this Court deems just and

proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all claims and issues so triable.

Dated: October 17, 2024
New York, New York

By:  /s/ Edward Andrew Paltzik
     Edward Andrew Paltzik, Esq.
     **Bochner PLLC**
     1040 Avenue of the Americas
     15th Floor
     New York, New York 10018
     (516) 526-0341
     edward@bochner.law

     *Attorney(s) for Plaintiff*